Dear Mr. Andries:
On behalf of the District Five Road and Public Works Commission of St. Landry Parish (hereinafter "Road District No. 5"), you have requested an opinion of this office regarding our interpretation of a proposition that will appear on the October 2008 ballot in St. Landry Parish. The proposition would create Road District Number One (hereinafter "District One") and give it the authority to levy and collect taxes. The taxes it collects could be used to perform road and drainage related projects and to assume the assets and liabilities of the road districts that currently exist in St. Landry Parish. Your request states, "We have no objection to the submittal of the tax but we do object to the wording. The Parish has drafted a call that says if the tax passes, District Five Road and Public Works Commission of St. Landry Parish will cease and all assets will be acquired by the Parish, even if the tax does not pass in the area that District Five Road and Public Works Commission of St. Landry Parish works in."
You provided us with a draft of the call for the millage proposition for Road District No. 1.[1] It provides: *Page 2 
 SUMMARY: AUTHORITY FOR ROAD DISTRICT NO. 1 OF THE PARISH OF ST. LANDRY (THE "NEW DISTRICT") TO LEVY A 10-YEAR 10 MILLS PROPERTY TAX DEDICATED TO CONSTRUCTING, ACQUIRING, IMPROVING, AND OPERATING THE ROADS, BRIDGES AND RELATED DRAINAGE FACILITIES OF THE NEW DISTRICT, WHICH NEW DISTRICT IS COMPRISED OF ALL OF THE TERRITORY IN THE UNINCORPORATED AREAS OF THE PARISH, INCLUDING THE ACQUISITION OF ASSETS OF OTHER ROAD/PUBLIC WORKS DISTRICTS WITHIN THE TERRITORY OF THE NEW DISTRICT.
 Shall Road District No. 1 of the Parish of St. Landry (the "New District") be authorized to levy a ten (10) mills tax (the "Tax") on all property subject to taxation in the New District for a period of ten (10) years beginning with the year 2008 and ending with the year 2017, the proceeds of which will be dedicated to constructing, acquiring, improving and operating the roads, bridges and related drainage facilities of the New District in accordance with the road priority capital improvements program approved by the Parish Council under the St. Landry Parish Home Rule Charter, and further to acquire the assets of St. Landry Public Works District/Road Commissions Nos. 4, 5, and 6 and St. Landry Parish Road District Nos. 2, 3, 7, 8, 9, and 10 and all subdistricts of the foregoing (collectively, the "Current Districts") and, following such acquisition of assets, to provide for the respective outstanding obligations of the Current Districts in a manner to allow for a reduction and/or termination of the road tax millages being levied by the Current Districts?
 It is estimated (as of the date of this proposition) that the total amount reasonably expected to be collected from the levy of the Tax for the first year will be $2,800,000.00.
The question of whether a road district can be terminated or consolidated depends on whether the road district was created by the legislature or by the local governing authority. Therefore, before addressing the proposition language cited above, it is necessary to discuss how the Road District No. 5 came into existence.
La.R.S. 42:600 — 601 create Road Districts Four, Five and Six, all of St. Landry Parish, and provide relative to the boards of commissioners and their power and duties. Road District No. 5 was specifically created as a political subdivision of the state by the legislature by La.R.S.48:600.1. The statute specifies that "the *Page 3 
commission shall be considered a political subdivision of the state," and has the power to levy and collect a tax. Atty. Gen. Op. No. 01-17. Currently, Road District No. 5 levies a special tax of 15 mills on all taxable property in its district. This tax was first approved at a special election held on October 16, 1993, and was assessed for a period of ten years (from 1994-2004), for the purpose of constructing, acquiring, operating, and maintaining the roads, bridges and road drainage facilities of the Commission and acquiring the necessary equipment therefore. The tax was renewed on May 4, 2002 and is set to expire in 2014.
In contrast to those road districts which were specifically created by legislation, St. Landry Parish also has some road districts which were created by the local governing authority. When a road district is created by the local governing authority, La.Const. art. VI, Section 15 states, "The governing authority of a local governmental subdivision shall have general power over any agency heretofore or hereafter created by it, including, without limitation, the power to abolish the agency and require prior approval of any charge or tax levied or bond issued by the agency." La.R.S. 33:1415 affirms the power of a governing authority to abolish any political subdivision it has created, but places limitations on the abolition. One such limitation is that if any indebtedness of the board remains outstanding, the authority to abolish the board cannot be exercised until provisions have been made for the assumption of the indebtedness. Atty. Gen. Op. No. 93-721. However, it is important to note that District One, not the St. Landry Parish Government, is calling this election. District One has no authority to abolish any road districts created by the local governing authority.
On the other hand, a road district created by the legislature is a political subdivision of the state and cannot be abolished by local government and the taxes taken over by the local government. Atty. Gen. Op. No. 01-17. As a political subdivision of the state, having been created by the legislature, it can only be abolished by the legislature. If, however, Road District No. 5 wanted to consolidate or merge into the newly created District One, La R.S. 48:600.1 (D)(3) gives it the authority to do so. Article VI, Section 16 of the Louisiana Constitution sets forth the process for consolidation of a political subdivision created by the legislature. It provides:
 (A) Consolidation. A local governmental subdivision may consolidate and merge into itself any special district or local public agency, except a school district, situated and having jurisdiction entirely within the boundaries of the local governmental subdivision. Upon the consolidation and merger, the local governmental subdivision shall succeed to and be vested with all of the rights, revenues, resources, jurisdiction, authority, and powers of the special district or local public agency. A consolidation and merger *Page 4 
shall become effective only if approved by a majority of the electors voting thereon in the local governmental subdivision as a whole and by a majority of the electors voting thereon in the affected special district. A local public agency shall be consolidated and merged only if approved by a majority of the electors voting thereon in an election held for that purpose in the local governmental subdivision in which the agency is located.
 (B) Assumption of Debt. If the special district or local public agency which is consolidated and merged has outstanding indebtedness, the authority provided by this Section shall not be exercised unless provision is made for the assumption of the indebtedness by the governing authority of the local governmental subdivision involved.
Thus, consolidation of Road District No. 5 into District One would require approval by a majority of the electors in the local governmental subdivision as a whole as well as a majority of the electors in Road District No. 5.
The proposition at hand is for the purpose of levies of a tax, it does not mention the words "consolidated" or "consolidation", or state "consolidation" as its specific purpose. Accordingly, the language in the proposition addressed in this opinion would not be sufficient to consolidate Road District No. 5 as the law requires the approval of voters in an election held for the specific purpose of consolidating or merging the political subdivision.
In addressing the merits of your request, we note initially that there is no language in the Proposition (as referenced in your request) that states "that if the tax passes District Five will cease and all assets will be acquired by the Parish."
Furthermore, our office has received a letter from Mahtook LaFleur (a copy of which is enclosed with this opinion), bond counsel for this proposition, reiterating that this is not an attempt to make Road District No. 5, or any other road district, cease to exist. If passed, the Proposition only gives the authority for District One (i) to perform its own road/drainage related projects; or (ii) to use funds generated by the taxes it collects to acquire road/drainage related assets and liabilities from the separate districts. This does not mean, however, that the current districts can be compelled to sell their assets to District One or that they must allow District One to assume responsibility for outstanding obligations. To the extent that the current road districts choose to transfer any portion of their construction and maintenance responsibilities to District One, it will be necessary to have intergovernmental agreements to specify which assets are to be acquired and which obligations/duties are to be assumed by District 1 and which will be *Page 5 
retained by the separate districts. To the extent a separate district transfers its obligations to District One, it is District One's intention to provide in the intergovernmental agreement with such separate district for a corresponding "roll back" of taxes levied by the separate district so that taxpayers will not be subject to double taxation for the same services.
Based on the foregoing and the language set forth in the Proposition, it is the opinion of this office that if the proposition passes, it will not result in an automatic consolidation of District Five into District One or cause District Five to "cease to exist." However, the end resultcould be a voluntary transfer of some, if not all, of the road responsibilities and obligations of the separate districts to District One and a corresponding reduction in taxes presently levied by the road districts currently in existence. The end result would be the consolidation of those responsibilities regarding roads into one district. The decision of which responsibilities, assets, and obligations to allow District One to assume will be the decision of each individual road district and must be set forth in an intergovernmental agreement between the individual road district and District One. If Road District No. 5 did choose to merge completely into District One, it would have to follow the process outlined in La.Const. art. VI, Sec. 16.
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 Attorney General
 By: __________________________
 Lindsey K. Hunter
 Assistant Attorney General
 Enclosure: letter from bond counsel
 JDC/LKH/crt
[1] Authority to hold the special election was approved by the State Bond Commission at its July 18, 2008 meeting. The description of the purposes for which proceeds (of the new tax) will be used which was submitted to the State Bond Commission for approval states as follows: 10 mills tax, 10 years, 2008-2017, constructing, acquiring, improving, and operating the roads, bridges and related drainage facilities of the new District and further to acquire the assets of St. Landry Public Works District/Road Commission Nos. 4, 5, and 6 and St. Landry Road District Nos. 2, 3, 7, 8, 9, 20 and all subdistricts of the foregoing and following the acquisition of assets, to provide for the respective obligations of the current districts in a manner to allow for a rededication and/or termination of the road tax millages being levied by the current districts.